## WAY v. THE ILLINOIS CENTRAL RAILROAD CO.

1. **Negligence**: PERSONAL INJURIES: WHAT EMPLOYE CANNOT RECOVER FOR. An employe who has knowledge of defects in the machinery about which he is employed, or who might know them by the exercise of reasonable care, cannot maintain an action for injuries resulting therefrom, if he continues in the employment without objection. Following *Muldowney v. The I. C. R. Co.*, 39 Iowa, 615.

2. ———: ———: BURDEN OF PROOF. In an action against a railroad company for personal injuries, the burden is upon the plaintiff to show that the injury occurred through the negligence of the company's employes, while the plaintiff was exercising ordinary care.

3. ———: ———: EVIDENCE. In determining whether ordinary care was exercised by the injured party, the jury may be instructed that the hazardous nature of the employment may be considered, and that they should give due weight to the instincts and presumptions which naturally lead men to avoid injury, and preserve their own lives.

4. **Evidence:** EXPERT TESTIMONY. The opinions of experts are not competent, when the subject is such that unskilled persons would be capable of forming correct conclusions respecting it.

*Appeal from Dubuque District Court.*

WEDNESDAY, APRIL 21.

THE plaintiff, as administrator of the estate of W. H. Palmer, alleges that said Palmer, on the 26th day of June, 1871, whilst in the employment of defendant, and without any negligence on his part, was, by the negligence of defendant, caught between a car and the engine, and so injured that he died within a few hours, on account of which plaintiff claims $20.000. The defendant denies all the allegations of the petition, and alleges that the injury to said Palmer was caused by his own negligence. There was a jury trial, and a verdict and judgment for plaintiff for $6.000. The defendant appeals.

*Crane & Rood* and *H. B. Fouke*, for appellant.

*D. E. Lyon* and *Shiras, Van Duzee & Henderson*, for appellee.

DAY, J.—At the time of the injury Palmer had been employed in the yard of the defendant, in the City of Dubuque,

1. NEGLIGENCE: personal injuries. about three weeks, coupling cars and assisting to make up trains. He received the injury of which he died, in an attempt to couple a National Line car to the tender of engine number 154. The evidence tended to show that this engine had been in the yard of defendant about ten years, and that National Line cars came into the yard daily, that they and the tender of engine number 154 were constructed with deadwoods, which came very close together when the draw-bar failed to enter the draw-head, and that, in consequence, the coupling of a National Line car to the tender in question was very dangerous, and could be accomplished in safety only by standing outside of the deadwoods, a distance of two or three feet from the center of the drawhead.

Defendant asked the court to instruct as follows:

" 7. Where an employe has knowledge of the defects or imperfections in the cars or machinery, upon or about which he is employed, or might by the exercise of due care to avoid injury to himself have such knowledge, and does not object thereto, but continues in his master's service, then he cannot sustain an action for an injury caused by such defects or imperfections, but he will be held to have assumed all the risks incident to the use of such defective cars or machinery." The court refused this instruction, and defendant excepted. In *Muldowney v. The Illinois Central Railroad Co.*, 36 Iowa, 462, (470), we held that it was not error to refuse to instruct the jury that " when the employe has the same knowledge or means of knowledge, of the defects or imperfections in the machinery or cars, about or upon which he is employed, as his employer has, and does not object thereto, he cannot sustain an action for an injury caused by such defects or imperfections, but will be held to have incurred all the risks of the employment incident to the use of such defective cars or machinery." When the same case was again before us, (39 Iowa, 615,) we held that it was error to refuse to give an instruction the same in all material respects as the seventh instruction above set out, and differing from it only in the arrangement of the words. The difference in the principles announced in the two decisions is quite apparent. A brakeman, although he may have the means and opportunity of doing so, is not required to go around and under the trucks with lantern and hammer, for the purpose of ascertaining whether there be any flaw or crack in a wheel or axle. The company employs parties to perform this duty, and the brakeman has the right to suppose that they will perform it properly, and he is justified in leaving the performance of it to them. At the same time he must make a reasonable use of his senses, and if a defect is apparent and patent, and would have been discovered by the exercise of reasonable and ordinary care, in view of the position which the brakeman occupies, the law conclusively presumes that he possesses the knowledge which reasonable attention would furnish. Any other rule would be opposed to, rather than promotive of, the interests of humanity, as it would encour-

age the grossest inattention, and would reward it the highest when it produced the profoundest ignorance. See *Muldowny v. The Illinois Central R'y Company*, 39 Iowa, 615, and cases cited; also *Greenleaf v. Illinois Central R'y Company*, 29 Iowa, 14, (46.)

II. The defendant also asked the court to instruct as follows: "14. If a brakeman on a railroad knows that the materials with which he works are defective, and continues his work without objecting, and without being induced by his master to believe that a change will be made, he is deemed to have assumed the risk of such defects; for the continuance of the brakeman in the employment is purely voluntary, and if he so continues without objection, with knowledge of defects in machinery, he is presumed to have waived the right to insist upon indemnity for injuries resulting from such defects."

"16. The law presumes the compensation paid a person employed as a brakeman on a railroad is, in part, a consideration for the risks, hazards and dangers ordinarily incident to that service."

"19. To entitle the plaintiff to recover in this action, the plaintiff must prove to the satisfaction of the jury, or else it 2.——: ——: must otherwise appear in the evidence to the sat-
<sub>burden of proof.</sub> isfaction of the jury, that the deceased was injured by the negligence of the defendant, whilst the deceased was observing ordinary care on his part to avoid injury, or did not by his own negligence contribute to the injury." These instructions should have been given. The principles which they involve have been recognized by this court, and are abundantly sustained by authority. See *Kroy v. Chicago Rock Island & Pacific R'y Co.*, 32 Iowa, 357, (361,) and cases cited. *Muldowneg v. Illinois Central R'y Co.*, 39, Iowa, 615, and authorities cited; *Greenleaf v. Illinois Central R'y Co.*, 29 Iowa, 14, (46,) and cases cited. It may be that a full and critical examination of the instructions given would discover that the principles of these instructions were sufficiently embodied in the charge of the court, and that, for the refusal to give these we would not feel inclined to reverse, if no other error existed.

III. The court in substance instructed that plaintiff is not required to produce direct and positive testimony, showing
3. —— : ——: just what the deceased was doing at the instant
evidence. that he received the injury causing his death; that the law requires only the highest proof of which the particular case is susceptible; and that the jury might take into consideration, in weighing the evidence, the hazardous nature of the work in which brakemen are employed, and give due weight to the instincts and presumptions which naturally lead men to avoid injury, and preserve their own lives.

It is objected that this shifts upon defendant the burden of proving the contributory negligence of the deceased. We do not think the instruction vulnerable to this objection. The instincts prompting to the preservation of life are thrown into the scale as evidence, like the presumptions of sanity and innocence. But when the whole evidence is considered, these instincts included, the plaintiff cannot recover unless the preponderance of the evidence is in his favor.

That a party can recover with less than a preponderance of testimony, and at the same time have the burden of proof, involves an evident contradiction. The principle of this instruction is recognized in *Greenleaf v. Illinois Central R'y*, 29 Iowa, 14, (48.) See also, *Allen v. Willand*, 57 Penn., 347; *C. & P. R. R. Co. v. Rowen*, 66 Penn., 399; *Northern Central R. R. v. Geis*, 31 Maryland, 367.

IV. The plaintiff introduced as a witness A. A. Walcott, who amongst other things, testified as follows:

Q. "State whether with National Line cars equipped as that car is, with a tender equipped as that tender is, is that as safely coupled as ordinary tenders?

A. No Sir, it is not.

Q. State whether those tenders, equipped as that is, can be safely used in making coupling with a car equipped as that National Line car is?

A. I always considered those National Line cars very unsafe. A man has got to look out very sharp so as not to get caught. Think they are not safe."

Plaintiff also introduced J. M. Way, who testified as follows:

Q. "State whether, in your opinion, a locomotive made like this model, and a car like the National Line car is safe to couple?

A. No Sir, they are not.

Q. State whether this particular kind is safe or unsafe, for a man to make up a train of cars?

A. I call it very unsafe."

All this testimony was objected to as incompetent. It seems to us that it all falls within the principle under which opinions 4. EVIDENCE: of witnesses were held incompetent in *Muldowney*
expert testi-
mony.          *v. The Illinois Central R'y Co.*, 36 Iowa, 462. (472.) The subject of inquiry, in this case was not such that unskilled persons would be likely to prove incapable of forming a correct judgment respecting it. Models of the tender and of the National Line car in question, were exhibited to the jury. Having the relations of the various parts explained the jury could have no difficulty in determining as to the danger which would attend the coupling of them. The matters inquired of are not proper subjects for the opinions of experts.

For the errors considered the judgment is

REVERSED.